UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND C. WALEN, JR.,

      Plaintiff,                          Case No. 06-14201

v.                                         District Judge John Corbett O'Meara
                                               Magistrate Judge R. Steven Whalen

EMBARQ PAYPHONE SERVICES,
INC.,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Embarq Payphone Services, Inc.'s motion for summary judgment [Docket #48], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  For the reasons set forth below, I recommend that the motion be GRANTED, and that the Plaintiff's amended complaint be DISMISSED WITH PREJUDICE.

**I.   FACTS**

Plaintiff, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed the present action on September 25, 2006 under 42 U.S.C. §1983, alleging violations of his rights under the First, Fourth, and Fourteenth Amendment. He seeks injunctive relief as well as compensatory and punitive damages.

The Complaint involves Plaintiff's allegation that telephone calls to his attorney

_____

[1] Plaintiff originally named "Sprint" as the Defendant. He subsequently filed an amended complaint substituting Embarq Payphone Services, Inc. as the real party in interest.

were intercepted and recorded. Named as Defendant is Embarq Payphone Services, a for-profit corporation that is the successor of Sprint Payphone Services, Inc. and along with its predecessor, has provided telephone service to inmates pursuant to a contractual relationship with the MDOC since September 2001. (*Motion for Summary Judgment, Docket #48*, 2). Under the contract, Embarq also provides a system where prisoners may submit telephone lists containing numbers to be designated as "private" and will not be recorded. (*Id.*, Ex. A, ¶5). Embarq does not approve of the telephone lists submitted from the prison or confirm whether a private number actually belongs to an attorney. (*Id.*, Ex. A, ¶6). Embarq does not record or listen live calls; rather, the equipment for doing so is located at the prison and maintained by third party vendors. (*Id.*, Ex. A, ¶¶6-7).

Plaintiff states that on December 28, 2001, during his confinement at the Egeler Correctional Facility, former Defendant Denman, a Resident Unit Manager, approved his request for the designation of "an attorney phone number" for the purpose of guaranteeing that his telephone calls to his attorney would not be monitored by prison staff. *Amended Complaint*, ¶10. He alleges that after receiving Denman's approval, he received a fax from Sprint (Embarq) on January 10, 2002 confirming the number's designation. *Id.* at ¶11. Plaintiff states that from January, 2002 forward, he placed calls to his attorney in the belief that their conversations were confidential. *Id.* at ¶15. He alleges however, that in October, 2003, then confined at MCF, he discovered that some of his calls to his attorney had in fact been intercepted and recorded, stating further that staff members met with him to discuss the problem and the following day "destroyed the tapes of the phone calls," informing him that destroying the tapes was the "routine procedure" in the case of improperly recorded conversations. *Id.* at ¶¶15-16.

Plaintiff claims, and Defendant's records corroborate that six telephone calls

between Plaintiff and his attorney, Barbara Levine, were recorded between April, 2003 and October, 2003.  (*Id.* at ¶13; *see also Motion for Summary Judgment*, Ex. A, ¶13). During the entire period of 2001 to 2003, Plaintiff placed more than 2,450 calls to attorneys and only the above six were recorded.  (*Id.*, Ex. A, ¶14).

On October 21, 2003, Plaintiff submitted a new telephone list and on October 23, 2003, Attorney Levine's number was added as a private number. (*Am. Compl*., ¶18). Defendant's records show that calls made to Ms. Levine after that time were not recorded. (*Motion for Summary Judgment*, Ex. A, 15).  After Plaintiff initiated a grievance process, Inspector Burton notified Plaintiff that six calls were recorded, ensured that all recorded calls to Ms. Levine were deleted, and determined through the monitoring log that none of the recorded calls were accessed.  (*Am. Compl*., 11).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.    ANALYSIS

#### A.    Defendant Qualifies as a State Actor

Defendant, a private corporation, first argues that it is not subject to § 1983 liability because it is not a "state actor."

Under §1983, an alleged deprivation of right guaranteed by the Constitution or laws of the United States must be done under color of State law or regulation. 42 U.S.C. §1983. "'To act 'under color of law' does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.'" *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 941, 102 S.Ct. 2744

(1982)(quoting *United States v. Prince*, 383 U.S. 787, 794, 86 S.Ct. 1152 (1966)). Similarly, a "state action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49, 119 S.Ct. 977 (1999)(quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). "Where, as here, deprivations of rights under the Fourteenth Amendment are alleged, these two requirements converge." *Blum v. Yaretsky,* 457 U.S. 991, 1002 n.8, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

The joint participant test considers whether "[t]he State has so far insinuated itself into a position of interdependence with [Defendant] that it must be recognized as a joint participant in the challenged activity." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 865 (1961). However, subsequent cases "have established that 'privately owned enterprises providing services that the State would not necessarily provide, even though they are extensively regulated, do not fall within the ambit of *Burton.*'" *American Mfrs. Mut. Ins. Co.* at 57 (quoting *Blum,* 457 U.S., at 1011, 102 S.Ct. 2777).

In the present case, MCL §791.270, allowing the monitoring of prisoners' telephone calls in a correctional facility if certain conditions are followed, satisfies the requirement of a right or privilege granted by the state. Next, it must be determined whether Defendant is considered a state actor. Defendant is correct in stating that mere regulation by the State is not enough to establish a nexus. However, Defendant is a for-profit company that contracted with the State from 2001 to 2006 to provide telephone

-5-

services for inmates. Furthermore, Defendant provided the system that determined which communications were monitored. Therefore, despite the fact that Defendant did not actually monitor or record the communications, the system worked jointly with the State's monitoring service. These facts illustrate that the Defendant and the State were interdependent, making a joint participant classification appropriate. Additionally, Defendant was acting under color of state law. It entered into a contract with the State to provide telephone services for inmates, which required a system to determine which calls were monitored. Therefore, it is considered a willing participant. Accordingly, Defendant may be considered a state actor, acting under color of state law, for purposes of § 1983.

In *Griffin-El v. MCI Telephone Corporation*, 835 F.Supp 1114 (E.D. Mo. 1993), the telephone company entered into a contract with the State to provide telephone services for prisoners and state regulations required MCI to inform recipients of telephone calls that the calls were coming from state prisons. *Id.* at 1118-1119. The court held that the telephone corporations were considered state actors for the purposes of §1983 under the joint participant, close nexus, and state compulsion tests. *Id.* The present case involves a similar situation where Defendant entered into a equivalent contract with the State, thus satisfying the joint participant test.

Defendant cites *Lansing v. City of Memphis*, 202 F.3d 821 (6th Cir. 2000), for the proposition that regulation, public function, or State compulsion alone is not enough to establish the close nexus relationship between a private party and the State. *Id.* at 830. In *Lansing*, a street preacher was asked, by a festival organizer, to leave a festival run by a non-profit organization and the court held that the organization was not considered a state actor. *Id.* However, the difference in the present case is that in addition to State

regulation, Defendant willingly entered a contract with the State to specifically provide telephone service to inmates. This goes beyond regulation, compulsion, or a public function and demonstrates a close relationship between Defendant and the State.

### B.     Injunctive Relief

The tapes of the six erroneously recorded conversations between Plaintiff and his attorney have been destroyed. As of October, 2003, Plaintiff's attorneys' calls have not been recorded, and indeed, there is a policy that proscribes the recording of such conversations. Moreover, Plaintiff has been transferred to a different institution. Thus, Plaintiff's request for injunctive relief is moot. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). "Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams,* 807 F.2d 1286, 1289 (6th Cir.1986). *See also Goldsborough v. Carlson,* 863 F.2d 48 (6th Cir. 1988) ("A prisoner's claims for injunctive relief are mooted upon that prisoner's release or transfer"). To the extent that he seeks an injunction to prevent possible inadvertent monitoring in the future, the law is clear that injunctive relief should not issue where the claimed damage is speculative or may never occur. *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003). Therefore, Plaintiff's claim for injunctive relief must be dismissed.

### C.     First Amendment

Plaintiff claims that the recording of his conversations violated his First Amendment right to access the courts.[2] Prison inmates have a constitutionally protected right

---

[2] To the extent that Plaintiff alleges a free-standing First Amendment claim based on violation of the attorney-client privilege, *see Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003), that claim must fail. The recordings of Plaintiff's conversations were never

-7-

of access to the courts, grounded in the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1988)("It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances"). In *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court held that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial. In other words, an inmate fails to state a claim "without any showing of prejudice to his litigation." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Plaintiff has submitted no evidence that any of his legal proceedings were prejudiced by the fact that six attorney calls out of at least 2,450 were recorded but not listened to. Despite the fact that the calls to were recorded, Plaintiff was still able to speak with attorney Levine and other attorneys regarding his legal issues, and, as the docket entries show, has diligently and aggressively litigated the present case. Because Plaintiff has neither shown nor alleged any prejudice to his litigation, his First Amendment right of access claim must be dismissed.[3]

### C. Fourth Amendment Violation

Plaintiff's claim under the Fourth Amendment is premised on the theory of an unreasonable seizure of his attorney-client telephone calls.

---

listened to, and the conversations themselves were not monitored. Hence, the content of attorney-client communications was never disclosed, and there was no violation of the privilege.

[3] In his prison grievance filed on April 4, 2004, and attached to the amended complaint as an exhibit, Plaintiff recommended the following solution: "Destroy all tapes containing my calls to attorney Levine." This is precisely what was done. The grievance response states that all of the calls to attorney Levine were deleted, and none of the calls were monitored or transcribed.

A Fourth Amendment claim can be brought only when a justifiable expectation of privacy exists. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A defendant who alleges that a search violated his Fourth Amendment rights has the burden of showing that he had a legitimate expectation of privacy in the place or thing that was searched, and to meet that burden must satisfy a two-pronged test: (1) he must manifest an actual, subjective expectation of privacy, and (2) that expectation is one that society is prepared to recognize as legitimate. *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988).

An individual's expectation of privacy is significantly reduced within the confines of a prison. *Hudson v. Palmer*, 468 U.S. 517, 525-26, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). However, given the privileged nature of attorney-client communications, and the importance of protecting those communications from improper disclosure, such communications, including telephone calls, would arguably be protected by the Fourth Amendment, under both the subjective and objective prongs of *Sangineto-Miranda*.[4]

Nevertheless, even assuming that Plaintiff's telephone calls to his attorney are generally protected by the Fourth Amendment, he has not stated a constitutional violation under the facts of this case. First, the calls to attorney Levine that were inadvertently recorded were preceded by a warning that "this call is subject to monitoring and recording." *Declaration of Eileen Cocklin, Exhibit A to Defendant's Motion, ¶ 9*. That being the case, the Plaintiff's expectation of privacy was extinguished, and he is deemed to have consented to the recording. In *United States v. Adams*, 2009 WL 1011205, *12 (6th Cir. 2009), the Sixth Circuit held:

---

[4] *But see Hadix v. Johnson*, 1989 WL 27984, *3 (6th Cir. 1989), holding that a Fourth Amendment analysis is inapplicable to a claim of violation of the attorney-client privilege.

> "The [defendants] could not have expected privacy where a message at the start of every telephone call informed the inmates that they had no right to privacy and that their conversation was being recorded and possibly monitored."

*See also United States v. Amen,* 831 F.2d 373 (2d Cir.1987), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988) (holding consent could be implied where prisoners received notification of recording on institutional telephones, and thus prisoners had no reasonable expectation of privacy in conversations on those phones).

Secondly, because Plaintiff's Fourth Amendment interests are based on a reasonable expectation of privacy with regard to the *content* of attorney-client communications, there can be no Fourth Amendment violation if the telephone calls were not listened to. They were not. Therefore, there was neither a search nor a seizure of the thing in which Plaintiff had a vested Fourth Amendment right.

### IV.   CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment [Docket #48] be GRANTED, and that the amended complaint be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: July 28, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 28, 2009.

s/Susan Jefferson<br>
Case Manager